*Law Library*

FILED
SUPERIOR COURT
OF GUAM

2013 AUG 28 PM 1:41

## IN THE SUPERIOR COURT OF GUAM

ARTHUR M. PAGUIO,

      Plaintiff,

      vs.

MARTINA E. PAGUIO, now known as
MARTINA-EVA TIMMERMAN-
LEVANAS,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DOMESTIC CASE NO. DM0816-06

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

### INTRODUCTION

This matter came before the HONORABLE VERNON P. PEREZ on April 19, 2013. Attorney Phillip Torres, Esq. represented Plaintiff/Respondent Arthur M. Paguio ("Mr. Paguio"). Attorney Peter C. Perez, Esq. represented Defendant/Movant Martina-Eva Timmerman-Levanas ("Movant"). Upon review of the evidence, oral and written arguments, and legal authorities presented by the parties, the Court hereby issues its Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

By preponderance of the evidence, the Court makes the following findings of fact:

1. The Parties were married on October 3, 2003.

2. On July 2, 2007, the Parties entered into a Divorce and Property Settlement Agreement: and Consent to Divorce (hereinafter "Agreement").

3. Under that Agreement, Mr. Paguio was obligated to make mortgage payments on Oka Towers, unit 411, where Movant then resided.

4. Mr. Paguio failed to make payments on the mortgage for the months of November and December 2009.

5. Mr. Paguio again began making regular mortgage payments after Movant's counsel transmitted a letter to Mr. Paguio's counsel instructing him to do so.

6. In June 2011, BankPacific contacted Movant to inform her of past due mortgage payments and that the bank would be foreclosing on the unit. Movant borrowed money to cure the arrears, in the amount of $3,175.78.

7. Movant requested Order to Show Cause on July 6, 2011, which the Court signed and filed on July 27, 2011.

8. On October 28, 2011, the Court issued a Decision and Order, in which Mr. Paguio was not found in contempt, but was required to assume the remaining mortgage payments on unit 411.

9. Movant borrowed money and made direct mortgage payments to BankPacific totaling $9,675.78.

10. Mr. Paguio did not make any payments pursuant to the Court's October 28, 2011 Decision and Order.

11. As a result, BankPacific issued a Notice of Sale Under Mortgage dated January 26, 2012.

12. To avoid imminent foreclosure, Movant sold unit 411.

13. Unit 411 sold for $250,000.

14. Of the sale proceeds Movant spent $82,395 to pay off the outstanding balance on the mortgage and $13,325 in settlement charges.

15. As a result of his business suffering, Mr. Paguio entered into discussions with his bank regarding debt consolidation. *See*. Transcript at 2:52:30 p.m. on April 19, 2013.

16. The actual debt consolidation was entered into on October 21, 2011. *Id.* at 3:06:10 p.m.

17. Mr. Paguio was not under court order to consolidate all of his debt. Instead he was under court order to assume the mortgage payments on unit 411.

18. When negotiating his debt consolidation, Mr. Paguio could have included unit 411 but did not. *Id.* at 3:13:50 p.m.

19. As a result of the debt consolidation, Mr. Paguio's two other properties (Unit 211, Oka Towers/ Unit 204, Villa Gi Papa Ladera) were encumbered at the time the Court issued its October 28, 2011 Decision and order. *See*. Pl.'s Ex. 6 & 7.

20. After the debt consolidation Mr. Paguio did not find success with his business. *See.* Transcript at 2:54: 35 p.m. on April 19, 2013.

21. Mr. Paguio was without discretionary income and therefore unable to comply with the Court's order. *Id.* at 2:57:32 p.m.

22. No evidence has been presented to establish that Mr. Paguio's debt consolidation and the resultant inability to pay was the product of a willful failure to comply with the court's order.

## CONCLUSIONS OF LAW

### I.   CONTEMPT

The Court has addressed the issue of contempt in this matter once before. The elements of a civil contempt action are: "1) a valid order, 2) knowledge of the order, 3) ability to comply with the order, and 4) willful failure to comply with the order." *Lamb v. Hoffman*, 2008 Guam

2, ¶ 44(internal citations omitted). In a civil action like divorce, Guam's contempt statute provides that "[a]ny person found guilty of a contempt of court pursuant to §34102(b) is subject to the same penalties as a person found guilty of a petty misdemeanor." *Id.*, citing, 7 Guam Code. Ann. § 34101(b) (2005). Further, Section 80.34 of Title 9 of the Guam Code provides that if a party is convicted of a petty misdemeanor, "the court shall set a definite term not to exceed sixty (60) days." 9 Guam Code Ann. § 80.34(b) (2005).

Generally, in federal courts "the moving party has the initial burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *U.S. v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008); *U.S. v. Saccoccia*, 354 f.3d 9, 14 (1st Cir. 2003)(in a civil contempt proceeding, clear and convincing evidence would be required); *Levin v. Tiber Holding Corp.*, 277 f.3d 243, 250 (2d Cir. 2002)(in the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a "reasonable certainty" that a violation occurred).

The non-moving party in a civil contempt proceeding may assert as an affirmative defense, their inability to comply with the order in question. *U.S. v. Rylander*, 460 U.S. 752, 757 (1983). The Guam Supreme Court has held that the affirmative defense of inability must be proven by a preponderance of the evidence. *Rodriguez v. Rodriguez*, 2003 Guam 8, ¶ 18 (Sup. Ct. Guam 2003).

In this case, the Court concludes that first two elements for civil contempt have been satisfied. A valid Court order was entered into on Oct. 28, 2011, which required Mr. Paguio to assume the entire mortgage for unit 411.[1] Mr. Paguio had knowledge of that order. With regard

---

[1] The Court acknowledges the existence and validity of the underlying Divorce and Property Settlement Agreement. However, the Court recognizes that a good-faith dispute arose out of the terms of that agreement, which this Court then rectified in its October 28, 2011 Decision and Order. As a result of that litigation, the Court's contempt analysis pertains to the alleged failure to comply with the Court's October 28, 2011 Decision and Order.

to the third element (ability to comply with the order), the Court concludes that the evidence is insufficient to establish that Mr. Paguio had the ability to comply with the order. Movant argued that Mr. Paguio owned other properties, which he could have liquidated in order to comply with the order. *See*. Transcript at 2:35:30 p.m. on April 19, 2013. While the Court accepts that Mr. Paguio could have done just that, the two other properties (Unit 211, Oka Towers/ Unit 204, Villa Gi Papa Ladera) were encumbered through debt consolidation *prior* to entry of this Court's order. Furthermore, Mr. Paguio's testimony indicated that, as a result of his business suffering and the debt consolidation, he was without discretionary income at the end of the month. *Id.* at 2:57:30 p.m. Therefore, the Court is not persuaded that Mr. Paguio had the ability to comply with the order.

Even if the Court were to find the evidence sufficient to establish Mr. Paguio's ability to comply with the order, the Court cannot conclude that the final element of contempt has been satisfied—that Mr. Paguio willfully failed to comply with the order. At the order to show cause hearing, Mr. Paguio testified that although he could have included unit 411 in his debt consolidation (in place of his other properties), negotiations with the bank and the actual execution of the debt consolidation were entered into *prior* to this Court's October 28, 2011 Decision and Order. *Id.* 3:06:10 p.m. No evidence has been presented to establish that Mr. Paguio willfully excluded unit 411 in order to avoid compliance with the Court's order. Thus, the fourth element of contempt has not been satisfied. The Court will not hold Mr. Paguio in contempt.

As previously mentioned, if the Court were to find that all the elements of contempt have been satisfied, the non-moving party may assert inability to pay as an affirmative defense. In *Lamb v. Hoffman*, the Guam Supreme Court affirmed the lower court's finding that the

alleged contemnor therein did not establish an inability to pay pursuant to the terms of a court order. *Lamb v. Hoffman*, 2008 Guam 2 ¶ 46. In that case, the alleged contemnor provided only a profit and loss statement for a business he owned along with an Income Tax Examination Changes Form. *Id.* Collectively, the two documents showed that the business operated at a loss, and that the alleged contemnor had no income for a certain amount of time. *Id.* The Court, however, found that these two documents, balanced against a finding that the alleged contemnor had access to a significant fortune, was insufficient to "convincingly establish" his inability to pay. *Id.* Also, in *Rodriguez v. Rodriguez*, the Guam Supreme Court affirmed the trial court's finding that the alleged contemnor did not establish his inability to pay. *Rodriguez v. Rodriguez*, 2003 Guam 8 ¶ 16. After considering the alleged contemnor's financial situation as a whole, which included the fact that he withdrew a substantial amount of money from his retirement account, the trial court found that the burden of establishing inability to pay was not met. *Id.*

In this case, Mr. Paguio testified to his inability to comply with the Court's order. His testimony revealed that he pays roughly $1300 per month in child support, $530 per month in car payments, and his rental income from unit 211 is assigned to the consolidated loan payment. Furthermore, his business did not regain success. Mr. Paguio testified that after all of his expenses, he did not have enough income to comply with the Court's order. Thus, even if all the elements of contempt were met, the Court finds that Mr. Paguio has established his inability to comply with the Court's order by a preponderance of the evidence.

## II.    DAMAGES

The Court acknowledges the availability of contempt proceedings to enforce a settlement agreement that is incorporated in to a divorce decree. *See. Leon Guerrero v. Moylan*,

2000 Guam 8 ¶ 8(citing *Richardson v. Edwards*, 127 F.3d 97, 101 (C.A.D.C 1997). However, because the Court will not hold Mr. Paguio in contempt, the Court need not address the issue of sanctions and/or damages.

**ORDER**

Based on the foregoing, the Court will not hold Mr. Paguio in contempt. Additionally, the Court will not impose any fines or award any compensatory damages.

**SO ORDERED** this ___ day of <u>August</u>, 2013.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.
Dated at Hagåtña, Guam

AUG 2 8 2013

Therese M. Blas
Deputy Clerk, Superior Court of Guam